No. 30,550.

STATE OF KANSAS, ex rel. MAX WYMAN, County Attorney, *Plaintiff,* v. FRANKLIN B. HETTINGER, GLENN R. WILLIAMS and Z. A. YOUNG, *Defendants.*

(5 P. 2d 862.)

Opinion filed December 12, 1931.

*Max Wyman,* county attorney, for the plaintiff; *Walter F. Jones,* of Hutchinson, of counsel.

*E. C. Clark,* city attorney, *C. E. Branine, H. R. Branine* and *Eustace Smith,* all of Hutchinson, for the defendants; *A. L. Oswald* and *C. W. Taylor,* both of Hutchinson, of counsel.

The opinion of the court was delivered by

DAWSON, J.: This is an original proceeding in quo warranto which challenges the validity of an ordinance of the city of Hutchinson which established a city court in that municipality pursuant

to the statute, R. S. 20-1401 to 20-1423, inclusive, the first section of which, as amended, reads:

"Whenever it is made to appear to the satisfaction of the governing body of any city of the first class or any city of the second class, with more than 13,900 population, that there is need for the establishment of a city court in such city for the administration of justice, such governing body may establish a city court in such city by ordinance of such city, and the mayor of such city, by and with the consent of such city commission or city council, shall appoint a judge of such city court, a clerk of such city court, and a marshal of such city court." (R. S. 1930 Supp. 20-1401.)

The requisite ordinance establishing the city court, defining its jurisdiction and procedure, creating the offices of judge, clerk and marshal to administer its affairs, was introduced on April 24, 1931, considered on May 1, and adopted on May 8, reconsidered and amended and passed as amended on May 15, and published on May 21, 1931.

The parties defendant herein are the judge, clerk and marshal of the newly created court. The petition alleges all the facts in detail, thereby raising legal questions which counsel for the state have summarized thus:

"(1) The judge, clerk and marshal of the city court were appointed before the publication of the ordinance and before it became effective, and are merely *de facto* officers, and as against the objection of the state have no right to exercise the rights, privileges and duties of their respective offices.

"(2) Ordinance No. 2077 was finally passed on May 8, 1931, and reconsidered on May 15 and was not then placed upon roll call and adopted section by section as provided by law, and is therefore not a valid ordinance. The motion to correct the minutes adopted by the commission in July is of no force and effect.

"(3) If ordinance No. 2077 as published was not adopted in the manner and form as by law required, it is illegal and void for the reason that it was enacted in violation of section 13-2601, R. S. 1923."

Defendants demurred to the petition and counsel for both sides orally argued the questions of law and have submitted briefs to aid the court in their solution.

Counsel for plaintiff concede that the first point outlined above, which relates to the appointment of the city court officers before the publication of the ordinance creating the court, is of little significance and need not engage our attention.

Touching the second point, it is urged that the legislative history of the ordinance discloses a serious infirmity. The ordinance was adopted on May 8, 1931. Prior to its publication it was discovered

that it did not conform to the statute in prescribing the salary of the marshal, and to correct that discrepancy, on May 15 the ordinance was reconsidered and amended in that respect, and the ordinance again passed as amended. The minutes of this incident were not fully recorded, and on July 31, 1931, the minutes were corrected by an order of the city commission so as to show that the ordinance was passed on roll call after the section concerning the marshal's salary had been corrected and amended.

Plaintiff contends that such legislative procedure was irregular and that the city commission has no control of the clerk's minutes. Counsel concede that the clerk would have the power on his own motion to correct the minutes of the city commission's deliberations, but that the commission itself had no power to direct him to correct them. That point is rather subtle, but in view of the fact that the clerk acquiesced in the order of the commission and did correct the minutes we need not now decide whether he was bound to do so on its order. But see *Waterworks Co. v. City of Columbus*, 46 Kan. 666, 674, 26 Pac. 1046; 43 C. J. 513, 516, 517; 19 R. C. L. 904; Note in 13 A. S. R. 553.

It is suggested, however, that the correction or amendment of the section of the ordinance relating to the marshal's salary was invalid because the section was not formally amended by a later ordinance. Once an ordinance is in full force and effect, of course that formality must be practiced, but here there was no ordinance in effect when the amendment was made. It had not been published, consequently it was within the control of the legislative body of the city just as much as if it had been amended at any other stage of its legislative history.

Passing now to the third objection to the validity of the ordinance creating the court, plaintiff stresses the fact that it will upset the city's budgetary arrangements for the current year. Pursuant to the statute, R. S. 13-2601, on August 22, 1930, the city commission adopted a budget for the fiscal year beginning on January 1, 1931, and ending December 31, 1931. At that time there was no city court in Hutchinson and no provision was made for it in the budget. When the city court was created by ordinance in May, 1931, and the officers appointed to conduct it and their salaries fixed, a discrepancy arose between the estimates of the budget and the expenses consequent upon the creation of the court, with the con-

sequence that a deficit has resulted or will result—which is something the budget law forbids; and the point is stressed that officers of the city who have any hand in causing such an *impasse* are guilty of official misfeasance and subject to ouster. (R. S. 13-2601, 13-2602.)

Because of the potency of that salutary statute designed to hold municipal expenditures within bounds, plaintiff postulates for consideration this question: Can the city enact a valid ordinance under its discretionary power incurring the expenses of the city in excess of its actual revenues for the fiscal year? It is argued that to answer this question affirmatively will mean the nullification of the budget law. It is well that counsel for the state should be alert to check all infractions of statutes designed to protect the interests of taxpayers, but it will hardly do for this court to intimate that the administration of justice—which some wise man has said is the chief business of man on this planet—is less important than preserving a proper balance between the city's fiscal receipts and disbursements for the year which is soon to expire. If Hutchinson cannot create a city court in 1931 because the expense of it was not taken into account when the budget was made up in August, 1930, the obvious query intrudes whether the budget then made could have taken into account the expenses of a court which did not then exist and whose subsequent creation the budgetary experts of the city could not then foresee. If that sort of reasoning is followed too closely Hutchinson never can have a city court because of the budget, and because the budget could not take into account the expenses of a court that did not exist.

In *State, ex rel., v. Bentley,* 98 Kan. 442, 157 Pac. 1197, the mayor of Wichita balked at calling a school election at the request of the board of education on the ground that no provision had been made for such expenditure in the city's current budget. The court held that he must do so; that the legislative inhibition against incurring obligations for which no monetary provision was made did not govern matters not wholly within the discretionary control of the city. Counsel for the state contend, however, that the rule of that case does not apply because here the creation of a city court was wholly within the discretionary control of the city government. The Wichita case is not precisely parallel to the one at bar, but it is not easy to see why the instant case should not be governed

by the same principle. The discretion of the city commission to create or not to create a city court would not be controlled by mandamus, but yet the *moral* obligation to create the court rested firmly on the consciences of the commissioners if they believed that a modern tribunal was needed to provide for the adequate and expeditious administration of justice in Hutchinson. And if the commissioners were convinced of such necessity it was the intention of the legislature that such a court should be created. We see no serious conflict between the budgetary statute, which was enacted in 1907, and the act authorizing the creation of city courts, which was enacted in 1923. Both can stand and should stand together. To whatever extent the lawful creation of the city court will disarrange the city's budgetary calculations for the current year, such a consequence will not impair the validity of the court—under the familiar rule that later enactments of the legislature take precedence over its earlier pronouncements when they cannot otherwise be harmonized. In the instant case it is gratifying to be advised in the briefs of counsel that in the new court which is already functioning 645 cases had been filed in the first six months—the fair significance of which is that soon the court will be paying its own way—at least it will not result in any serious burden upon the general revenue fund of the city.

There is no infirmity in the ordinance creating the city court of Hutchinson, nor in the title to the offices held by defendants under its provisions. It follows that judgment should be entered in favor of defendants. It is so ordered.