This decision was not selected for publication in the New Mexico Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Please also note that this electronic decision may contain computer-generated errors or other deviations from the official paper version filed by the Supreme Court and does not include the filing date.

# IN THE SUPREME COURT OF THE STATE OF NEW MEXICO

**Opinion Number:** _____

**Filing Date:**      5-21-12

**NO. 31,858**

**STATE OF NEW MEXICO,**

  Plaintiff-Appellee,

v.

**BEAU JAMES MUSACCO,**

  Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
Ross C. Sanchez, District Judge

Jacqueline L. Cooper, Chief Public Defender
William A. O'Connell, Assistant Appellate Defender
Santa Fe, NM

for Appellant

Gary K. King, Attorney General
Joel Jacobsen, Assistant Attorney General
Santa Fe, NM

for Appellee

## DECISION

**MAES, Chief Justice.**

{1}   Following a jury trial, Beau James Musacco (Defendant) was sentenced to life imprisonment for two convictions of willful and deliberate first degree murder, eighteen months for tampering with evidence, and 364 days for concealing his identity.  Defendant appeals directly to this Court pursuant to Rule 12-102(A)(1) NMRA, which allows for an appeal of a sentence of life imprisonment to be taken directly to this Court.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

{2}   About an hour after midnight on New Year's Day 2007, the Albuquerque Police Department (APD) responded to what initially appeared to be two separate accidents near the intersection of I-40 and Carlisle Blvd. in Albuquerque.  The first accident involved Defendant's vehicle, which hit a light pole.  One of the first officers at the scene observed more than two sets of shoe prints in the snow, all of which led away

from Defendant's vehicle. Defendant's blood was later found on the trunk and on the rear passenger door of his vehicle.

{3} The second accident involved a Ford Explorer (Explorer), which was found on the median at the top of the I-40 off-ramp, approximately fifty yards away from Defendant's vehicle. Inside the Explorer were the bodies of Linda Gilkey (Gilkey) and Nancy Parker Davidson (Davidson) (collectively "Victims"). Gilkey had been shot in the back of the head, and Davidson had been shot in the left jaw. One side of the Explorer was scratched, suggesting that it either had sideswiped something or had been sideswiped. The Explorer's tire tracks suggested that the vehicle had stopped and backed up a short distance on the off-ramp, pulling slightly to the side, before stopping on the median.

{4} APD investigators found a set of shoe prints leaving the Explorer, which headed west and ended at the Carlisle intersection. APD followed the shoe prints and found a gun that matched the bullet casings found in the Explorer. Officer Carter, a canine handler for the Albuquerque SWAT section who had been trained in "man-tracking," found a second set of shoe prints. These shoe prints were made by a different set of shoes and ultimately ended at the Econo Lodge Inn (Inn). This second set of shoe prints was also accompanied by blood drops.

{5} Once at the Inn, APD began searching for blood on the Inn's exterior door handles. APD found blood on the exterior handle of Room 216 (the motel room). A

member of the SWAT team telephoned the motel room and spoke to Margo Watson (Watson), an acquaintance of Defendant. A while later, Watson and Defendant walked out of the room and were taken into custody. APD officers then performed a protective sweep of the motel room. After the protective sweep, Officer Carter entered the motel room to verify that the tread pattern from a pair of boots matched the shoe prints he had been following. Defendant and Watson were subsequently transported to an APD station house where Detective O'Neil swabbed Defendant's hands for DNA evidence.

{6} In March 2007, prior to trial, the State filed a motion for a buccal swab (March 2007 mouth swab) of Defendant. The motion stated that "[m]aterial evidence in this cause consists of blood evidence which was collected in multiple areas at the crime scene," which could belong to Defendant. The motion was granted after Defendant stipulated that the discovery provided by the State established probable cause that the evidence collected at the crime scene could belong to Defendant.

{7} Defendant filed two pretrial motions to suppress evidence. In the first motion, Defendant asserted that his federal and state constitutional rights were violated when on January 1, 2007, Detective O'Neil swabbed Defendant's hands for DNA evidence without first obtaining a warrant. Defendant asked the district court to exclude all testimony and evidence derived from Defendant's DNA swabs collected on both January 1, 2007, and July 12, 2007. In particular, Defendant asked that the DNA

3

profile obtained pursuant to the court-ordered buccal swab be suppressed in light of the warrantless January 1, 2007, hand swab. In the second motion, Defendant asserted that his federal and state constitutional rights were violated when, following a protective sweep, Officer Carter entered the motel room without a warrant and examined the tread on a pair of boots. Defendant further requested that the district court suppress the items of clothing, photographs, plastic leis, currency and other documents that were found in the motel room. The district court denied both of Defendant's motions to suppress.

{8} Following a jury trial, Defendant was sentenced to life imprisonment for the two willful and deliberate first degree murder charges, eighteen months for the tampering with evidence charge, and 364 days for the concealing of identity charge. Defendant appeals his convictions directly to this Court. We exercise appellate jurisdiction where life imprisonment has been imposed. N.M. Const. art. VI, § 2; Rule 12-102(A)(1) NMRA (appeal from sentence of life imprisonment taken directly to Supreme Court).

{9} Defendant raises four issues on appeal: (1) Officer Carter's entry into the motel room to search for evidence violated Defendant's constitutional rights because it was not pursuant to a warrant or justified by an exception to the warrant requirement; (2) Detective O'Neil's swabbing of Defendant's hands for DNA evidence violated Defendant's constitutional rights because the swabbing was not pursuant to a warrant

4

or justified by an exception to the warrant requirement; (3) the trial court erred in admitting the boots seized from Defendant's motel room into evidence because the State failed to establish an adequate chain of custody; and (4) there was insufficient evidence to support Defendant's first degree murder conviction.

**II.  DISCUSSION**

**A.   Neither The Warrantless Entry into Defendant's Motel Room nor The Swabbing of Defendant's Hands for DNA Evidence Violated Defendant's Constitutional Rights because Both Were Justified by Exigent Circumstances**.

{10}      Appellate review of a motion to suppress presents this Court with a mixed question of law and fact. *State v. Leyva*, 2011-NMSC-009, ¶ 30, 149 N.M. 435, 250 P.3d 861.  We review the facts in the light most favorable to the prevailing party, giving deference to the district court's findings of fact that are supported by substantial evidence. *State v. Urioste*, 2002-NMSC-023, ¶ 6, 132 N.M. 592, 52 P.3d 964.  We review the legal determinations de novo. *Id.*

{11}      Defendant's motion to suppress the hand swab and motion to suppress the search of the motel room each claimed that the searches were illegal under both the United States Constitution and the New Mexico Constitution.  The trial court denied both of Defendant's motions to suppress, but did not specify whether the ruling was based on the exigent circumstance exception under the Fourth Amendment to the United States Constitution or under Article II, Section 10 of the New Mexico Constitution.  The trial court did, however, rely on the Court of Appeals case of *State*

5

*v. Valdez* to reach its conclusion that exigent circumstances were present, which justified the warantless search. 111 N.M. 438, 441, 806 P.2d 578, 581 (Ct. App. 1990) ("The test to determine if exigent circumstances exist is whether, on the basis of the facts known to a prudent, cautious, trained officer, the officer could reasonably conclude that swift action was necessary." (internal citation and quotation marks omitted)). Because Defendant did not receive a ruling on his Fourth Amendment claim, we do not apply our interstitial approach set forth in *State v. Gomez* to determine whether Defendant's constitutional rights were violated. 1997-NMSC-006, ¶ 19, 122 N.M. 777, 932 P.2d 1. Therefore, we focus our analysis on whether, under the New Mexico Constitution, there were exigent circumstances which justified the warrantless searches in this case.

{12} Article II, Section 10 of the New Mexico Constitution ensures that

> [t]he people shall be secure in their persons, papers, homes and effects, from unreasonable searches and seizures, and no warrant to search any place, or seize any person or thing, shall issue without describing the place to be searched, or the persons or things to be seized, nor without a written showing of probable cause, supported by oath or affirmation.

"[U]nless there is an exception to the warrant requirement, the government must get a warrant before exceeding the scope of a private search." *State v. Rivera*, 2010-NMSC-046, ¶ 25, 148 N.M. 659, 241 P.3d 1099. "Among the recognized exceptions to the warrant requirement are exigent circumstances, consent, searches incident to arrest, plain view, inventory searches, open field, and hot pursuit." *State v. Duffy*,

6

1998-NMSC-014, ¶ 61, 126 N.M. 132, 967 P.2d 807. "For entry into the home to be lawful, officers must have probable cause in addition to exigent circumstances." *State v. Ryon*, 2005-NMSC-005, ¶ 26 n.4, 137 N.M. 174, 108 P.3d 1032.

{13}     This Court has defined exigent circumstances as "an emergency situation requiring swift action to prevent imminent danger to life or serious damage to property, or to forestall the imminent escape of a suspect or destruction of evidence." *State v. Saiz*, 2008-NMSC-048, ¶ 13, 144 N.M. 663, 191 P.3d 521, *overruled in part on a use immunity issue by State v. Belanger*, 2009-NMSC-025, 146 N.M. 357, 210 P.3d 783 (internal quotation marks and citation omitted). Whether exigent circumstances exist "requires a determination [of] whether 'on the basis of the facts known to a prudent, cautious, trained officer, the officer could reasonably conclude that swift action was necessary." *Id.* (internal quotation marks and citation omitted). The exigent circumstances exception "provides a range of reasonable discretion to an officer on the scene." *Id.* ¶ 15. This "reasonable discretion" analysis aligns with the key inquiry under Article II, Section 10, which is reasonableness. *See Campos v. State*, 117 N.M. 155, 157, 870 P.2d 117, 119 (1994) ("[T]he ultimate question is whether the search and seizure was reasonable." (internal quotation marks and citation omitted)); *State v. Attaway*, 117 N.M. 141, 149, 870 P.2d 103, 111 (1994), *modified on other grounds by State v. Lopez*, 2005-NMSC-018, ¶¶ 13-20, 138 N.M. 9, 116 P.3d 80. Therefore, "[t]he fact that a different course of action also would have been

7

reasonable does not mean that [an officer's] conduct was unreasonable." *Saiz*, 2008-NMSC-048, ¶ 15 (internal quotation marks and citation omitted).

## 1. Entry into Defendant's Motel Room

{**14**}  Neither party disputes the fact that Officer Carter entered the motel room without a warrant. Defendant contends, however, that Officer Carter's warrantless entry was not justified by exigent circumstances, and therefore, the trial court erred in denying Defendant's motion to suppress the evidence obtained from the motel room. Defendant requests that we reverse his convictions and remand for a new trial. In response, the State claims that Defendant lacked standing to object to APD's entry into the motel room. The State notes, however, that even if Defendant did have standing to object to APD's entry into the motel room, the evidence presented at the motion to suppress hearing established all three types of exigent circumstances, justifying Officer Carter's entry. We assume, without deciding, that Defendant had standing to object to APD's entry into the motel room.

{**15**}  The trial court made the following factual findings at the motion to suppress hearing:

Officer Carter has put things in perspective. He testified we don't know what we're up against. He also testified the issue [sic] matched two sets of prints. So there was a little bit of confusion, but there was a need for investigation. And this fact about issue matched two sets of prints, this increases the degree of exigent circumstances. Exigent circumstances means an emergency situation. And we know that we had an emergency situation requiring swift action to prevent imminent danger to life or to

forestall the imminent escape of a suspect, and three, to avoid destruction of evidence. That is the definition of exigent circumstances.

And in this situation and in this emergency situation, the officers were faced with all these prongs of exigent circumstances.

*State v. Valdez* states that on the basis of the facts known to prudent, cautious, trained officers, the officer could reasonably conclude that swift action was necessary. It is evident from the situation that we have here and from what Officer Carter testified that there was a dire need for swift action in the present case, the officers needed swift action because they needed to quickly compare the shoe print to the prints visible from the crime scene. If it was not a match . . . they needed to continue the search for the shoe with prints matching the footprints from the crime scene. At the time, the issue was searched. A prudent officer could believe that there was potentially imminent danger to life, imminent escape of a suspect or potential destruction of evidence.

{16} In viewing Officer Carter's testimony through the lens of what a prudent, cautious, trained officer knew, we determine that Officer Carter's actions were reasonable. Normally, the exigent circumstance of imminent escape of the suspect applies to a situation where a suspect has yet to be detained. In this case, the fear was not the imminent escape of Defendant, but that if the boot did not match the prints in the snow, then the killer was not yet detained. The fear of a shooter on the loose causing additional harm to others while a search warrant was secured, the limited purpose of Officer Carter's entry and presence in the motel room, the short amount of time Officer Carter spent in the motel room, and the fact that Officer Carter did not touch the boots, are all factors which illustrate the reasonableness of Officer Carter's

9

search. Therefore, we hold that Officer Carter's actions were reasonable, and the trial court did not err in denying Defendant's motion to suppress the evidence obtained from the motel room.

**2. Swabbing of Defendant's Hands for Biological Evidence**

{17} The district court denied Defendant's pretrial motion to suppress the results of the January 1, 2007, hand swab and all evidence derived from that hand swab. This motion included a specific request that the result of a subsequent State-requested mouth swab of Defendant be suppressed because it was obtained as a result of the unconstitutional January 1, 2007, hand swab.

{18} The State argues that even if Defendant's January hand swab was improper, the State's March request for a mouth swab, which linked Defendant to the scene of the crime, was independent of the January hand swab. The timing of when the swabs were taken from Defendant and when they were actually analyzed is relevant to this issue.

{19} Detective O'Neil swabbed Defendant's hands for DNA evidence on January 1, 2007, but these swabs were not analyzed until May 2007. On March 26, 2007, two months before the January hand swabs were analyzed, the State filed its motion to obtain a mouth swab from Defendant. The State argued that "Defendant is alleged to be the person that committed the criminal acts of two (2) Open counts of Murder" and that "material evidence in this cause consists of blood evidence which was collected

in multiple areas at the crime scene." The trial court granted the State's motion for the mouth swab on July 12, 2007. At the February 13, 2009, motion to suppress hearing, the trial court again stressed that "the [January 1, 2007, hand] swabs were not part of the consideration for granting the motion for [the mouth] swabs." The January hand swab of Defendant did not "taint" any of the subsequent evidence which linked Defendant to the crime. All the hand swab revealed was Defendant's own DNA. It was the subsequent mouth swab, which was asked for by the State and granted by the trial court independent of, and prior to, the January hand swab results, that linked Defendant to the crime. Therefore, the mouth swab was independent of the January 1, 2007, warrantless search of Defendant.

{20}    There were also exigent circumstances which, when viewed objectively, justified the warrantless hand swab of Defendant. Detective O'Neil indicated that he was told to swab Defendant's hands for the presence of Victims' "biological material" because, despite the fact that Defendant had taken a shower, there was still the possibility of Victims' DNA being present on Defendant. The concern was that if Defendant's hands were not swabbed immediately, he would have had additional time to destroy this potential evidence. Because the biological material could have been destroyed, the warantless hand swab was justified by exigent circumstances. Accordingly, the trial court properly denied Defendant's motion to suppress the January 1 hand swab and subsequent mouth swab.

11

{21} "We examine the admission or exclusion of evidence for abuse of discretion, and the trial court's determination will not be disturbed absent a clear abuse of that discretion." *State v. Stanley*, 2001-NMSC-037, ¶ 5, 131 N.M. 368, 37 P.3d 85.

**B. The Trial Court Did Not Abuse Its Discretion in Admitting the Boots into Evidence Because the State Established an Adequate Chain of Custody of the Boots from the Time They Were Taken from the Motel Room Until They Were Entered into Evidence.**

{22} Defendant claims that the trial court abused its discretion in admitting the boots as an exhibit because the chain of custody was not properly established according to *State v. Chavez*, 84 N.M. 760, 761, 508 P.2d 30, 31 (Ct. App. 1973). *Chavez* stated:

> In order to admit real or demonstrative evidence at trial, the item of evidence in question must be identified, either visually or by establishing the custody of the object from the time it was seized to the time it is offered in evidence. For admission, it suffices if the evidence establishes it is more probable than not the object is the one connected with the case.

*Id.* (internal citations omitted). Defendant asserts this claim pursuant to *State v. Franklin*, 78 N.M. 127, 129, 428 P.2d 982, 984 (1967), and *State v. Boyer*, 103 N.M. 655, 658, 712 P.2d 1, 4 (Ct. App. 1985).

{23} *Chavez* listed factors to be considered in making a determination of whether a chain of custody was established before an exhibit was entered into evidence. 84 N.M. at 761, 508 P.2d at 31. These factors "include the nature of the article, the circumstances surrounding the preservation and custody of it, and the likelihood of intermeddlers tampering with it." *Id.* (citing *United States v. S. B. Penick & Co.*, 136

12

F.2d 413, 415 (2d Cir. 1943)). Nonetheless, it is not required that the State establish the chain of custody in sufficient detail to exclude all possibility of tampering. *Claridge v. N.M. State Racing Comm'n*, 107 N.M. 632, 640, 763 P. 2d 66, 74 (Ct. App. 1988). A potential gap in establishing a chain of custody affects the weight of the evidence, not its admissibility. *State v. Peters*, 1997-NMCA-084, ¶ 26, 123 N.M. 667, 944 P.2d 896.

{24} In this case, it was during Detective Jennifer Garcia's (Garcia) testimony that the State entered the boots into evidence. Detective Garcia admitted that she did not physically receive the boots from the motel room, but had told Detective Eric Beckstrom (Beckstrom) to collect the boots. She then saw Detective Beckstrom collect the boots and put them in a bag. After returning to the Albuquerque Police Department Crime Lab (APD Crime Lab), Detective Garcia took the same boots out of the bag, which was being stored in the APD evidence locker. According to Detective Garcia, she disposed of the initial bag and placed each boot in separate bags. She then proceeded to label and seal the bags, placing her initials on the seals.

{25} When Detective Beckstrom took the stand, he testified that he "was involved with helping bag and collect some items inside the room." When asked if he personally handled the boots, he stated that "I could very well have. I know that we bagged some particular items in there. It's possible I could have bagged a pair of [boots] that was found inside that room." Detective Beckstrom was then shown

13

Exhibits 137 and 138, the boots. He could not identify the handwriting on the bags, but testified that any evidence he had bagged would have had his initials on it. Detective Beckstrom stated that "I see my name on [the bag] and the time it was collected, and I was in the room at that time. As to it being the bag that I put [the boots] into, it's not my writing on the bag." Detective Beckstrom and Detective Garcia's testimony established a chain of custody that accounted for the boots from the time they were collected from the motel room until they appeared in court and were entered into evidence.

{26} The chain of custody was proven through the Detectives' testimony and established that the boots that were entered into evidence were the same boots collected from the motel room. The trial court, therefore, did not abuse its discretion by admitting the boots into evidence. Any concern regarding a potential gap in the chain of custody of the boots would affect the overall weight of the evidence, not its admissibility. *Peters*, 1997-NMCA-084, ¶ 26.

**C. There was Sufficient Evidence of Deliberate Intent to Support Defendant's Convictions of First Degree Murder.**

{27} "The test for sufficiency of the evidence is whether substantial evidence of either a direct or circumstantial nature exists to support a verdict of guilty beyond a reasonable doubt with respect to every element essential to a conviction." *State v. Riley*, 2010-NMSC-005, ¶ 12, 147 N.M. 557, 226 P.3d 656 (internal quotation marks and citation omitted). We view "the evidence in the light most favorable to the guilty

verdict, indulging all reasonable inferences and resolving all conflicts in the evidence in favor of the verdict." *State v. Cunningham*, 2000-NMSC-009, ¶ 26, 128 N.M. 711, 998 P.2d 176.

{28} Defendant contends that there was insufficient evidence to convict him of first degree murder, claiming that the evidence supports "at most, a finding of a rash and impulsive shooting after a vehicular accident, and cannot be characterized as willful and deliberate first degree murder." He argues that "the State failed to provide any affirmative evidence of deliberation that would elevate the killings to the highest degree of murder." In response, the State claims that there was sufficient evidence to support Defendant's deliberate intent to kill. To support deliberate intent, the State relies upon the fact that Defendant climbed into the back seat of Victims' vehicle and shot Victims in the head at extremely close range.

{29} The requisite state of mind for first degree murder is a "willful, deliberate and premeditated" intention to kill. NMSA 1978, § 30-2-1(A)(1) (1994); *see also State v. Adonis*, 2008-NMSC-059, ¶ 14, 145 N.M. 102, 194 P.3d 717. "The word deliberate means arrived at or determined upon as a result of careful thought and weighing of the consideration for and against the proposed course of action." UJI 14-201 NMRA. Though deliberate intent requires a "calculated judgment" to kill, the weighing required for deliberate intent "may be arrived at in a short period of time." *Id.* In determining whether a defendant made a calculated judgment to kill, the jury may

infer intent from circumstantial evidence; direct evidence of a defendant's state of mind is not required. *State v. Duran*, 2006-NMSC-035, ¶ 7, 140 N.M. 94, 140 P.3d 515.

{30}　Defendant claims his case is analogous to *State v. Garcia*, 114 N.M. 269, 837 P.2d 862 (1992), and *State v. Taylor*, 2000-NMCA-072, 129 N.M. 376, 8 P.3d 863. Defendant argues that, as in *Garcia* and *Taylor*, the evidence supports no more than a finding of second degree murder because there was insufficient evidence to show that he "weighed the considerations for and against his proposed course of action; and that he weighed and considered the question of killing and his reasons for and against his choice."; *Taylor*, 2000-NMCA-072, ¶ 19 (citing *Garcia*, 114 N.M. at 274, 837 P.2d at 867). It is for his lack of deliberate intent that Defendant asks us to reverse his convictions. We determine, however, that there was enough physical and circumstantial evidence from which the jury could have found beyond a reasonable doubt that Defendant had the deliberate intent to kill Victims. *Duran*, 2006-NMSC-035, ¶ 7 (stating that intent may be inferred from circumstantial evidence; direct evidence is not required).

{31}　The evidence presented in this case showed that Defendant, following the accident, was inside the Explorer when he killed Victims. According to Laura Pearn, a forensic scientist for the APD Crime Lab, Defendant's DNA was on the right rear fender, the interior side panel of the right rear door, and the right rear interior door

16

handle of the Ford Explorer. DNA was also found on the gun. The DNA test conducted on the gun ruled out Gilkey and Davidson's DNA, but was not able to rule out Defendant's DNA.

{32} Evidence relating to Victims' gunshot wounds also supports the conclusion that Defendant was inside the Explorer when he shot Victims. Dr. Michelle Barry (Dr. Barry), who supervised Victims' autopsies, testified that Gilkey was shot "in the back of the head on the left-hand side, close to the middle" of her head. Dr. Barry concluded that Gilkey's death was a homicide. Davidson suffered a gunshot wound that entered at her left cheek and exited at her neck. In Davidson's case, there was a four by four inch area of gunpowder stippling around the wound. Because of the stippling, Dr. Barry estimated the range of fire, the distance from the end of the gun to Davidson's skin, to be between six and sixteen inches. Dr. Barry ruled Davidson's death as a homicide. Michael Haag, a scientist in the firearms and toolmarks unit of the APD Crime Lab, concluded that based on the "orientation of the decedents in this vehicle [and] the location of cartridge casings," the gunshots were likely fired from the rear towards the front of the vehicle, possibly between the two seats. In *State v. Coffin*, this Court found sufficient evidence of deliberation where the defendant shot the victim from behind. 1999-NMSC-038, ¶ 76, 128 N.M. 192, 991 P.2d 477.

{33} Officer Jesse Becton testified that when he first approached Defendant's vehicle, he noticed shoe prints leading away from Defendant's vehicle, but that no one

17

was in or around the vehicle. Officer Frank Tilliman testified that when he approached the Explorer he saw shoe prints leading away from the Explorer, toward the Inn. From this evidence, a reasonable jury could infer that in the time it took Defendant to exit his vehicle and walk to the Explorer, he had enough time to weigh the considerations for and against killing Victims.

{34} Viewing the evidence in a light most favorable to the verdict, we conclude that a reasonable jury could find that Defendant had the deliberate intent to kill Victims. Accordingly, there was sufficient evidence to support Defendant's first degree murder conviction.

## III. CONCLUSION

{35} The trial court did not abuse its discretion (1) when it denied the motions to suppress evidence and (2) when it admitted the boots into evidence. There was substantial evidence of Defendant's deliberate intent to kill Victims. We affirm Defendant's convictions.

{36} **IT IS SO ORDERED.**

_____ _____

**PETRA JIMENEZ MAES, Chief Justice**

18

**WE CONCUR:**

_____
**PATRICIO M. SERNA, Justice**


_____
**RICHARD C. BOSSON, Justice**


_____
**EDWARD L. CHÁVEZ, Justice**


_____
**CHARLES W. DANIELS, Justice**