IN THE SUPREME COURT OF THE STATE OF NEW MEXICO

Opinion Number: 2010-NMSC-046

Filing Date: October 19, 2010

Docket No. 31,656

STATE OF NEW MEXICO,

Plaintiff-Respondent,

v.

ERICA RIVERA,

Defendant-Petitioner.

ORIGINAL PROCEEDING ON CERTIORARI
Denise Barela Shepherd, District Judge

Hugh W. Dangler, Chief Public Defender
J.K. Theodosia Johnson, Assistant Appellate Defender
Santa Fe, NM

for Petitioner

Gary K. King, Attorney General
Andrew S. Montgomery, Assistant Attorney General
Santa Fe, NM

for Respondent

OPINION

CHÁVEZ, Justice.

{1}    In this case, a private citizen is alleged to have opened a sealed container that contained a toolbox holding several opaque bundles. The private citizen did not open any of the opaque bundles. When a law enforcement officer who was made aware of the private search obtained possession of the resealed container, he accompanied a second private citizen who re-opened the sealed container. The officer then cut open an opaque bundle to confirm his suspicion that it contained marijuana. The question is whether the officer violated either the Fourth Amendment of the United States Constitution or Article II, Section

1

10 of the New Mexico Constitution when he cut open the opaque bundles without a search warrant.

{2}	Under the Fourth Amendment of the United States Constitution, a law enforcement officer may repeat a private search and may exceed the scope of the private search, so long as (1) the expansion was only de minimus, and (2) obtaining a warrant would only minimally advance Fourth Amendment interests. We have consistently interpreted the search and seizure provision of the New Mexico Constitution, however, as imposing a greater requirement for a warrant than its federal counterpart. Accordingly, under the New Mexico Constitution an officer must obtain a valid warrant from a neutral and detached judge to expand the private search absent an exception to the warrant requirement. N.M. Const. art. II, § 10. Our approach encourages private citizens to assist police officers in the investigation of crimes, while faithfully safeguarding existing privacy interests as required by our constitution.

{3}	Because the officer in this case opened opaque bundles without a valid search warrant or an exception to the warrant requirement, the district court correctly suppressed the evidence. Accordingly, we reverse the Court of Appeals and affirm the district court.

## I.	BACKGROUND

{4}	Defendant Erica Rivera was charged with possession of a controlled substance with intent to distribute contrary to NMSA 1978, Section 30-31-22(A)(1) (1990) (amended 2005), or in the alternative, possession of marijuana contrary to NMSA 1978, Section 30-31-23 (1990) (amended 2005). Defendant sought to have the package containing marijuana and her statements suppressed as fruits of an illegal search and seizure. She argued that the search violated the Fourth Amendment of the United States Constitution and Article II, Section 10 of the New Mexico Constitution because the "[i]nitial seizure, as well as the subsequent search, of the package at the Bus Station was without probable cause to believe it contained contraband; [i]t was without a warrant and without consent, and therefore unlawful."

{5}	At the hearing on the motion to suppress, the events leading up to the search and Defendant's subsequent arrest were described by Agent Perry of the Drug Enforcement Administration (DEA). Unless otherwise noted, the following testimony by Agent Perry was based on information he was given by an anonymous caller who reported what he had heard from someone else about the package.

{6}	A sealed package addressed to Defendant was shipped from Texas on a bus operated by the El Paso-Los Angeles Limousine Express. The package was addressed to Albuquerque, New Mexico, but it was misdirected to Denver, Colorado. Agent Perry received a call from an individual who identified himself as an employee of the bus company in California, who wished to remain anonymous. Agent Perry did not know from where the anonymous caller placed the call, nor did he testify (1) that he knew the caller, (2) why he

thought the caller was credible, or (3) why he believed the information was reliable.

{7}    The anonymous caller told Agent Perry that bus company employees in Denver became suspicious about the contents of the package after receiving more than a dozen calls from a woman who identified herself as Defendant, demanding to know where her package was and claiming that it contained jerky. Suspecting that the package contained something more nefarious than beef jerky, one or more bus company employees in Denver opened the package and found a tool box that held bundles wrapped in brown plastic. The anonymous caller stated that although he was not present when the package was opened, and although he had not seen the package, from what he had been told, he believed the brown bundles contained marijuana. The basis for the anonymous caller's suspicions was not articulated for the court. Agent Perry likewise testified that based on the description he was given and his training and experience, he believed the bundles contained marijuana.

{8}    The anonymous caller asked Agent Perry what the bus company should do with the package. Agent Perry instructed the caller to have the package resealed and shipped to Albuquerque, New Mexico. When the package arrived in Albuquerque several hours later, Agent Perry and another agent met with the bus station manager, who re-opened the package in their presence, either at the direction of Agent Perry or because the manager intended to do so anyway. After the package was opened, Agent Perry saw the opaque bundles. Agent Perry concluded, based on his training and experience, that he had probable cause to believe that the bundles contained marijuana. He knew that one or more of the bundles had been cut into, but he did not remember if he personally cut into them that night. Agent Perry believed that he did not need a warrant to open the opaque bundles because (1) the package already had been opened in Denver by "an administrative employee," and (2) his training and experience gave him probable cause to believe the packages contained marijuana. Defendant was later arrested when she came to retrieve the package.

{9}    The only other witness who testified at the suppression hearing was a criminal investigator for the State of New Mexico. She testified that she spoke with a manager of the bus company who told her that it was against company policy for an employee to open a package within the company's control.

{10}    The district court granted Defendant's motion to suppress, finding that

> there was State interaction in the handling of this package, from Denver to Albuquerque. . . . [T]hat upon its delivery to Albuquerque, that there was State interaction in the control and opening of the package here in Albuquerque. . . . [T]hat there was no evidence to support that the package was not properly labeled and sealed. Further, with regard to sufficient probable cause, the Court finds that the State has failed to produce evidence that there was information given to the DEA agent that was reliable.

The district court also held that if,

3

in fact, the opening of the package was constitutional; it was performed by administrative function of the bus employee, given the prior knowledge and direction of this package by the DEA agent, the Court finds that the DEA agent had sufficient time to obtain a search warrant, prior to taking–or touching or taking possession or continued possession of the package. The State has failed to establish or provide any evidence that there were exigent circumstances that would warrant the failure to obtain such a warrant.

The court noted that there were "numerous confrontational issues in this matter." The State appealed and we previously addressed the question under the Confrontation Clause in *State v. Rivera*, 2008-NMSC-056, ¶ 23, 144 N.M. 836, 192 P.3d 1213 (*Rivera II*). We remanded the case to the Court of Appeals to "decide the remaining issues presented to that Court but left undetermined in its opinion, including if deemed appropriate the possibility of a remand to the district court." *Id.*

**{11}** On remand the Court of Appeals addressed "whether the State's warrantless search and seizure was reasonable." *State v. Rivera*, 2009-NMCA-049, ¶ 1, 146 N.M. 194, 207 P.3d 1171 (*Rivera III*). The Court of Appeals remanded the case to the district court to determine "whether there was state involvement in the original opening of the package in Denver." *Id.* ¶ 6. The Court held that the invasion of privacy in Denver did not implicate Defendant's privacy rights if there was no state involvement, and that the investigation in Albuquerque was valid because it did not unreasonably exceed the scope of the original opening in Denver. *Id.* ¶ 2. In so doing, the Court adopted the "private search doctrine" that applies to "searches conducted by private parties . . . which are then repeated by government agents." *Id.* ¶ 12 (alteration in original) (internal quotation marks and citation omitted). The Court of Appeals held that "Defendant's privacy interest in the contents of the package had been largely compromised." *Id.* ¶ 14 (internal quotation marks and citation omitted). Although the Court found that there was state action when Agent Perry oversaw the Albuquerque manager open the package, *id.* ¶ 12, it reversed the district court's holding that the search and seizure was unreasonable when Agent Perry directed that the package be sent to Albuquerque. *Id.* ¶ 15. On the issue of opening the opaque bundle, the Court of Appeals held that "[e]ven if Agent Perry cut open one of the bundles in Albuquerque, as Defendant alleges, he did not *unreasonably expand* upon the original breach of Defendant's expectation of privacy." *Id.* ¶ 14 (emphasis added).

**{12}** We granted Defendant's petition for writ of certiorari on the issue of whether the Court of Appeals erred in holding that Agent Perry did not impermissibly expand the search by opening the opaque bundle. *State v. Rivera*, 2009-NMCERT-005, 146 N.M. 728, 214 P.3d 793. We reverse the Court of Appeals and affirm the district court.

## II. THE SEARCH WAS CONSTITUTIONAL UNDER THE FOURTH AMENDMENT, BUT IT VIOLATED ARTICLE II, SECTION 10

**{13}** The Court of Appeals relied upon *United States v. Jacobsen,* 466 U.S. 109 (1984),

holding that if an "individual's expectation of privacy is breached by a private actor, then subsequent investigation by the state is not an unreasonable search or seizure under the Fourth Amendment, so long as the subsequent investigation does not expand upon the scope of the original breach." *Rivera III*, 2009-NMCA-049, ¶ 13. The Court held that the agent's actions "were based upon his belief that the package had already been opened by the Denver station employee." *Id.* ¶ 14. When he opened the package, he saw what had been described to him, and therefore "his actions were within the scope of the privacy violation already perpetrated by the Denver station employee." *Id.* The Court also held that cutting into one of the bundles did not impermissibly expand upon the private search because "[t]he knowledge Agent Perry gained from the Bus Company employee about the package, his experience with drugs and packaging of drugs, and his observations of the package and the bundles within would have supported his actions." *Id.*

**{14}** The State argues that it was reasonable for Agent Perry to reopen the package because Defendant no longer had an expectation of privacy in the package after it had been opened by a private party who later invited Agent Perry to take control of it. Defendant counters with three arguments. First, the mere allegation of a private search is insufficient to dispense with the warrant requirement. Second, the private search doctrine applies only when the officer is shown the contents of the package by the private party who opened the package. Third, Article II, Section 10, as interpreted by this Court, requires a warrant before an officer can search an opaque container. Because Defendant prevailed at the district court level, her citation to the New Mexico Constitution was adequate to preserve the state constitutional claim. *See State v. Garcia*, 2009-NMSC-046, ¶ 12, 147 N.M. 134, 217 P.3d 1032.

**{15}** The interstitial approach requires the court to determine whether the right is protected by the Fourth Amendment and, if not, whether the state constitution affords greater protection. *See State v. Gomez,* 1997-NMSC-006, ¶¶ 19, 20, 22, 122 N.M. 777, 932 P.2d 1. The state constitution will be interpreted to afford greater protection if we conclude that the federal analysis is flawed, we find structural differences between the state and federal government, or we find distinctive state characteristics. *Id.* ¶ 19. Therefore, we begin our discussion by reviewing whether the Fourth Amendment protects Defendant from the actions of the government agent in this case.

## A.    Fourth Amendment Protection:  The Private Search Doctrine

**{16}** In the context of searches, the Fourth Amendment protects against the infringement of "an expectation of privacy that society is prepared to consider reasonable." *Jacobsen*, 466 U.S. at 113. Such protection, however, does not extend to searches conducted by private citizens because the Fourth Amendment only restrains unreasonable actions by the government. *Id.* at 113-14. Once the expectation of privacy has been lost due to a private search, "the Fourth Amendment does not prohibit governmental use of the now-nonprivate information." *Id.* at 117. The private search doctrine allows government officials to search a container without a warrant if a private individual, without participation by the

government, searched the container and reveals its contents to the government agent. *Id.* at 116; *but see Illinois v. Andreas,* 463 U.S. 765, 773 (1983) (discussing that although the expectation of privacy may be lost by a private search, it can be potentially regained where there is a "substantial likelihood that the contents have been changed" during a gap in surveillance). The rationale for this doctrine is that by conducting a search subsequent to the private search, the agent is not learning anything that he did not already know as a result of what was disclosed by the private search. *Jacobsen*, 466 U.S. at 119-20. It follows, however, "[t]he additional invasions of respondents' privacy by the Government agent must be tested by the degree to which they exceeded the scope of the private search." *Id.* at 115.

{17}    In *Jacobsen,* employees of a private freight carrier opened a damaged package, and beneath eight or nine layers of wrappings discovered clear plastic bags containing a white powdery substance. *Id.* at 111. After replacing the contents in the box, employees notified the DEA. A DEA agent then arrived on the scene, re-opened the package, and conducted a field test on the powdery substance. *Id.* at 111-12. The United States Supreme Court held that the opening of the package by the employees of the freight carrier, whether accidental or deliberate, and whether reasonable or unreasonable, "did not violate the Fourth Amendment because of their private character." *Id.* at 115. As for the actions of the agent upon arrival, the Court held that "[t]he additional invasions of [defendants'] privacy by the Government agent must be tested by the degree to which they exceeded the scope of the private search." *Id.* "Once frustration of the original expectation of privacy occurs, the Fourth Amendment does not prohibit governmental use of the now nonprivate information." *Id.* at 117. Therefore, "a manual inspection of the tube and its contents would not tell [the agent] anything more than he already had been told. . . . [And t]he agent's viewing of what a private party had freely made available for his inspection did not violate the Fourth Amendment." *Id.* at 119-20.

{18}    The Court applied the private search doctrine as an exception to the warrant requirement, even when the items to be searched are not in plain view.

> Even if the white powder was not itself in "plain view" because it was still enclosed in so many containers and covered with papers, there was a virtual certainty that nothing else of significance was in the package and that a manual inspection of the tube and its contents would not tell [the agent] anything more than he already had been told.

*Id.* at 118-19. The Court held that based on what had been learned from the private individual who had previously searched the package, the act of resealing the package "could not create any privacy interest with respect to the package that would not otherwise exist." *Id.* at 120 n.17. Thus, removal of the clear plastic bags from a tube within the package and a visual inspection of the contents "enabled the agent to learn nothing that had not previously been learned during the private search." *Id.* at 120.

{19}    The *Jacobsen* Court also upheld the constitutionality of a field test of the contents

6

of the clear bags because this expansion of the private search was de minimis and "the safeguards of a warrant would only minimally advance Fourth Amendment interests." *Id.* at 125. The Court reasoned that the subsequent field test did not further compromise any legitimate interest in privacy because the field test only confirmed for the agent that the substance was cocaine. *Id.* at 122-23. Also, "the suspicious nature of the material made it virtually certain that the substance tested was in fact contraband." *Id.* at 125. "[T]hus governmental conduct that can reveal whether a substance is cocaine, and no other arguably 'private' fact, compromises no legitimate privacy interest." *Id.* at 123. The Court also reasoned that "the likelihood that official conduct of the kind disclosed by the record will actually compromise any legitimate interest in privacy seems much too remote to characterize the testing as a search subject to the Fourth Amendment." *Id.* at 124.

{20}   In this case, analyzing the Fourth Amendment under *Jacobsen*, if a private search occurred in Denver, Agent Perry's actions, including cutting into the bundle,  would not violate the Fourth Amendment. The private search authorized Agent Perry to re-examine the contents as long as he did not unreasonably exceed the scope of the private search. We are confident that the United States Supreme Court would conclude that by re-opening the package in Albuquerque, Agent Perry learned nothing more than what he had been told by the bus company employees, and therefore did not infringe upon any privacy rights of Defendant.

{21}   Although cutting into an opaque bundle exceeded the scope of the private search, this would likely still be permissible under *Jacobsen* since Defendant's privacy interest in the package contents had been compromised by the private search in Denver. *Id.* Although the bundles were not transparent, as was the case in *Jacobsen*, we believe the United States Supreme Court would conclude that the additional intrusion of cutting into a bundle was de minimis since Agent Perry believed the bundles contained marijuana. *Id.* at 121. Requiring Agent Perry to obtain a warrant "would only minimally advance Fourth Amendment interests," *id.* at 110, and would be unnecessary under *Jacbosen* in light of the certainty of the contents and the fact that the previous search had largely compromised Defendant's privacy interest in the package. *Id.* at 121. Therefore, Agent Perry did not unreasonably expand the private search under the Fourth Amendment.

## B.      Article II, Section 10 Has a Stronger Preference for a Warrant than the Fourth Amendment

{22}   Defendant also asserts that the search of the package was unconstitutional under Article II, Section 10 of the New Mexico Constitution. We have previously observed that the states have the inherent power as separate sovereigns to provide more liberty than that mandated by the United States Constitution. *See Gomez*, 1997-NMSC-006, ¶ 17 ("We are not bound to give the same meaning to the New Mexico Constitution as the United States Supreme Court places upon the United States Constitution, even in construing provisions having wording that is identical, or substantially so." (internal quotation marks and citation omitted)). "[T]his Court has demonstrated a willingness to undertake independent analysis

of our state constitutional guarantees when federal law begins to encroach on the sanctity of those guarantees." *State v. Gutierrez*, 116 N.M. 431, 440, 863 P.2d 1052, 1061 (1993). "Article II, Section 10 expresses the fundamental notion that every person in this state is entitled to be free from unwarranted governmental intrusions, and thus [we have] identified a broader protection to individual privacy under the New Mexico Constitution." *Garcia*, 2009-NMSC-046, ¶ 29 (internal quotation marks and citation omitted); *see also Gomez*, 1997-NMSC-006, ¶ 24 ("There is established New Mexico law interpreting Article II, Section 10 more expansively than the Fourth Amendment."); *State v. Granville*, 2006-NMCA-098, ¶ 19, 140 N.M. 345, 142 P.3d 933 ("Specifically, Article II, Section 10, provides greater protections for privacy.").

{23}     The protection we apply in this case is New Mexico's strong preference for a warrant under Article II, Section 10. *See Gomez*, 1997-NMSC-006, ¶ 36 ("In interpreting our search and seizure provision, this Court consistently has expressed a strong preference for warrants."). Accordingly, we decline to interpret Article II, Section 10 consistent with *Jacobsen* because *Jacobsen* "does not comport with the distinctive New Mexico protection against unreasonable searches and seizures." *Garcia*, 2009-NMSC-046, ¶ 27.

{24}     Notwithstanding our preference for a warrant, we have sought to encourage private citizens to assist police in their investigations of crimes by declining to suppress evidence that has been discovered by private citizens and turned over to the police. *See State v. Santiago*, 2009-NMSC-045, ¶ 5, 147 N.M. 76, 217 P.3d 89 ("[T]he Fourth Amendment is not implicated and suppression is unwarranted when a private person voluntarily turns over property belonging to another and the government's direct or indirect participation is nonexistent or minor." (internal quotation marks and citations omitted)); *State v. Johnston*, 108 N.M. 778, 780-81, 779 P.2d 556, 558-59 (Ct. App. 1989) (constitutional analysis not applicable to blood sample taken from defendant for medical purposes and later turned over to police); *State v. Perea,* 95 N.M. 777, 779, 626 P.2d 851, 853 (Ct. App. 1981) (holding that the defendant's shirt, which had been turned over to the officer by a nurse who removed it, did not need to be suppressed because "[a]n officer who is lawfully in a position which exposes evidence to him does not need a warrant to seize it.").

{25}     In *Jacobsen*, the United States Supreme Court also seeks to promote private citizen assistance of officers. Where we depart from *Jacobsen* is on the issue of the reasonableness of the expansion of a private search. We agree with Justice Stevens' analysis in *Walter v. United States*, 447 U.S. 649 (1980):

> [i]f a properly authorized official search is limited by the particular terms of its authorization, at least the same kind of strict limitation must be applied to any official use of a private party's invasion of another person's privacy. . . . [S]urely the Government may not exceed the scope of the private search unless it has the right to make an independent search.

*Id.* at 657. We hold that unless there is an exception to the warrant requirement, the

government must get a warrant before exceeding the scope of a private search. *See State v. Duffy*, 1998-NMSC-014, ¶ 61, 126 N.M. 132, 967 P.2d 807 ("Among the recognized exceptions to the warrant requirement are exigent circumstances, consent, searches incident to arrest, plain view, inventory searches, open field, and hot pursuit." (citation omitted)), *holding modified on other grounds by State v. Gallegos*, 2007-NMSC-007, 141 N.M. 185, 152 P.3d 828. We decline to retreat from our precedent which interprets Article II, Section 10 as having a stronger preference for a warrant than the Fourth Amendment. This approach honors the state's interest in encouraging private citizens to assist police officers, yet safeguards the preference for a warrant when the government seeks to search private property. This approach does not impose any greater burdens on law enforcement, since for decades law enforcement officers in New Mexico have sought warrants despite their belief that they had probable cause to believe a package contained contraband. *See State v. Mann*, 103 N.M. 660, 665, 712 P.2d 6, 11 (Ct. App. 1985) ("Observations gleaned after a valid consent to enter and inspect premises may also provide a basis for establishing probable cause for the issuance of a search warrant."). In *Mann*, while searching the trunk of a car with the permission of the owner, an officer discovered "a brown package sealed with tape, positioned behind the trunk lining." *Id.* at 662-63, 712 P.2d at 8-9. Before the officer could inspect the package, the owner withdrew his consent to the search. *Id*. at 663, 712 P.2d at 9. After the defendant was arrested, the officer obtained a warrant to search the package and testified that "the wrapping of the package observed by him appeared to be of the type normally used to package marijuana." *Id*. When government agents rely upon their training and experience, they can bring such information to a neutral and detached magistrate to issue a warrant. *See State v. Nyce*, 2006-NMSC-026, ¶ 11, 139 N.M. 647, 137 P.3d 587 ("[W]hile we give deference to a magistrate's decision, and to an officer's observations, experience, and training, their conclusions must be objectively reasonable under all the circumstances."), *limited on other grounds by State v. Williamson*, 2009-NMSC-039, 146 N.M. 488, 212 P.3d 376. We next determine whether Agent Perry's actions in opening the opaque bundle without a warrant violated Article II, Section 10.

## III.    AGENT PERRY NEEDED A SEARCH WARRANT TO OPEN THE OPAQUE BUNDLES

{26}    Agent Perry testified that he understood that employees of the bus company had opened the package and discontinued their private search when they discovered bundles wrapped in brown plastic. This information defined the scope of the private search by the bus company. Agent Perry was not shown the contents of the package by the bus company. Instead, he instructed the caller to have the package resealed and shipped to Albuquerque, New Mexico. When the package arrived in Albuquerque several hours later, the bus station manager re-opened the package, either at the direction of Agent Perry or because the manager intended to do so anyway. After the package was opened, Agent Perry saw the opaque bundles. Agent Perry believed, based on his training and experience, that he had probable cause to believe that the bundles contained marijuana. He cut open one or more of the bundles.

**{27}**     It is not necessary for us to decide whether Agent Perry could re-open or direct that the package be re-opened without a search warrant since, in any event, he exceeded the scope of the private search.  Absent an exception to the warrant requirement, he was required by our constitution to obtain a search warrant if he wanted to open the opaque bundles.  It was a neutral judge's responsibility to independently determine whether the circumstances, including the agent's experience and training, gave the officer probable cause to believe that the opaque bundles contained marijuana.  Although Agent Perry concluded that he had probable cause to believe the brown plastic bundles contained marijuana, we have never delegated to the officer the final decision of whether the officer did have probable cause.  We have required the officer to seek a search warrant from a neutral and detached judge.  *See Nyce*, 2006-NMSC-026, ¶ 9 ("[T]he constitutional prohibition against unreasonable searches and seizures prefers an independent review of the evidence, rather than one from police who are engaged in the often competitive enterprise of ferreting out crime." (internal quotation marks and citation omitted)).  Therefore, unless an exception to the warrant requirement exists, Agent Perry opened the opaque bundle in violation of Article II, Section 10.

**{28}**     The State suggests that Agent Perry could search the brown plastic wrapped bundles under the plain view doctrine.  Under the plain view doctrine, "items may be seized without a warrant if the police officer was lawfully positioned when the evidence was observed, and the incriminating nature of the evidence was immediately apparent, such that the officer had probable cause to believe that the article seized was evidence of a crime." *State v. Ochoa*, 2004-NMSC-023, ¶ 9, 135 N.M. 781, 93 P.3d 1286.  Under the plain view exception, "the need for a search warrant is obviated if the contents of the container can be inferred by the container's outward appearance or if the contents are in plain view." *State v. Vasquez*, 112 N.M. 363, 368, 815 P.2d 659, 664 (Ct. App. 1991); *see also State v. Johnson*, 1996-NMCA-117, ¶ 22, 122 N.M. 713, 930 P.2d 1165 (holding that "the cocaine would have been in plain view inside the transparent Life Savers container"); *United States v. Corral*, 970 F.2d 719, 725 (10th Cir. 1992) ("In cases involving closed containers . . . the plain view doctrine may support the warrantless *seizure* of a container believed to contain contraband but any subsequent *search* of the concealed contents of the container must be accompanied by a warrant or justified by one of the exceptions to the warrant requirement.").

> If the State conducts a search without a warrant and without sufficient grounds for an exception to the warrant requirement, we will suppress the evidence to effectuate in the pending case the constitutional right of the accused to be free from unreasonable search and seizure.  This recognition of the constitutional nature of the exclusionary rule is based in large part on our Supreme Court's strong preference for the protections afforded by the warrant process.

*State v. Wagoner*, 2001-NMCA-014, ¶ 29, 130 N.M. 274, 24 P.3d 306 (internal quotation marks and citation omitted).  The plain view doctrine did not authorize Agent Perry to open the opaque bundle because he thought he had probable cause to believe the bundles

10

contained marijuana.  A warrant was required.

## IV.    CONCLUSION

**{29}**    Under Article II, Section 10 of the New Mexico Constitution, an officer may seize a package that already has been searched by a private party and turned over to the officer. Absent an exception to the warrant requirement, the officer may not exceed the scope of the private party search without a warrant.  In this case, Agent Perry exceeded the scope of the private search without first seeking a warrant when he opened the opaque bundles.  Because we do not find an exception to the warrant requirement, however, the district court's decision to suppress the evidence is affirmed.

**{30}    IT IS SO ORDERED.**

                               _____

                               **EDWARD L. CHÁVEZ, Justice**

**WE CONCUR:**

_____

**CHARLES W. DANIELS, Chief Justice**

_____

**PATRICIO M. SERNA, Justice**

_____

**PETRA JIMENEZ MAES, Justice**

_____

**RICHARD C. BOSSON, Justice**

**Topic Index for *State v. Rivera*, Docket No. 31,656**

| **CT** | **CONSTITUTIONAL LAW** |
| --- | --- |
| CT-FA | Fourth Amendment<br>See Also, CRIMINAL PROCEDURE, Search and Seizure |
| CT-IT | Interstitial Analysis |
| CT-SU | Suppression of Evidence<br>See Also, CRIMINAL PROCEDURE, Search and Seizure<br>CRIMINAL PROCEDURE, Motion to Suppress; and, EVIDENCE,<br>Exclusion of Evidence |

| **CA** | **CRIMINAL PROCEDURE** |
| --- | --- |

CA-PW          Plain View
CA-PI          Private Search (NEW)
CA-SZ          Search and Seizure
CA-WS          Warrantless Search
               See Also, CRIMINAL PROCEDURE, Search and Seizure