The slip opinion is the first version of an opinion released by the Clerk of the Court of Appeals. Once an opinion is selected for publication by the Court, it is assigned a vendor-neutral citation by the Clerk of the Court for compliance with Rule 23-112 NMRA, authenticated and formally published. The slip opinion may contain deviations from the formal authenticated opinion.

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

Opinion Number: _____

Filing Date: January 29, 2025

**No. A-1-CA-41023**

**STATE OF NEW MEXICO,**

       Plaintiff-Appellant,

v.

**ANDREW HUERTA a/k/a**
**ADAM CONTRERAS,**

       Defendant-Appellee.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Britt Baca-Miller, District Court Judge**

Raúl Torrez, Attorney General
Santa Fe, NM
Meryl E. Francolini, Assistant Solicitor General
Albuquerque, NM

for Appellant

Harrison & Hart, LLC
Nicholas T. Hart
Albuquerque, NM

for Appellee

**OPINION**

**HANISEE, Judge.**

{1}     The State appeals the district court's order suppressing evidence seized during an inventory search of a vehicle, and a container found within it, that Defendant Andrew Huerta was driving immediately before he was arrested. The district court concluded that, while the Fourth Amendment to the United States Constitution permits such a search, Article II, Section 10 of the New Mexico Constitution does not. In its order, the district court concluded that, under Article II, Section 10, Defendant had a privacy interest in a closed, cylindrical Fritos corn chip canister, found in an open backpack on the vehicle's floorboard in front of the driver's seat. It further determined that a Bernalillo County Sheriff's deputy's search of the chip canister was not reasonably necessary to accomplish one of the three established governmental purposes justifying warrantless inventory of a vehicle's contents before it is impounded. *See State v. Jim*, 2022-NMCA-022, ¶¶ 13, 14, 22, 508 P.3d 937 (stating that, under Article II, Section 10, a vehicle inventory search's reasonableness is determined by balancing the intrusion upon an individual's privacy interest against the governmental and societal need for the search to (1) protect the arrestee's property, (2) protect the police from claims regarding lost or stolen property, or (3) protect the police from potential danger). We write formally to address the lawful scope of warrantless inventory searches of vehicles and closed or

sealed containers found within them under Article II, Section 10 of the New Mexico Constitution. For the reasons set forth, we affirm.

**BACKGROUND**

{2}     At approximately 2:00 a.m. on February 21, 2022, Defendant was driving a black Chevrolet Tahoe through a fast food restaurant drive-through line. A sheriff's deputy was in a vehicle behind the Tahoe and noticed that the Tahoe did not have a valid registration tag. The deputy looked up the vehicle's license plate number in the National Crime Information Center (NCIC) database and found that the Tahoe was registered to a person, later determined to be someone other than Defendant, with an outstanding felony arrest warrant that indicated the subject may be armed and dangerous. The deputy's NCIC inquiry also revealed the Tahoe lacked valid registration and insurance. The deputy called for backup, and additional deputies arrived at the restaurant in several fully marked patrol vehicles.

{3}     Once the Tahoe pulled out of the drive-through line, the deputies activated their overhead lights and conducted a traffic stop deemed "high-risk" due to the potentially armed and dangerous status of the vehicle's registered owner. Because of the high-risk nature of the stop, deputies immediately removed the vehicle's occupants—Defendant and a woman who was in the front passenger seat—handcuffed them, and locked them in the back of separate patrol vehicles. After being detained, Defendant and the female passenger told the deputies that Defendant

2

had recently purchased the vehicle from the registered owner but had failed to register it in his name. Although Defendant turned out not to be the subject of the felony arrest warrant, an NCIC search for Defendant's name revealed that he had an outstanding misdemeanor arrest warrant for an unrelated traffic matter.

{4}     The deputies arrested Defendant on the basis of this warrant and decided to impound the Tahoe because Defendant was not its registered owner and there was no one else available to whom they could release it. Pursuant to department policy, deputies then conducted an inventory search of the vehicle's contents to ensure any valuables therein were properly accounted for and secured before the vehicle was towed from the scene. During the search, the deputies found an open backpack on the vehicle's floorboard in front of the driver's seat that Defendant stated belonged to him. The deputies later explained their understanding that during a vehicle inventory search, department policy requires all such containers found within a vehicle to be opened and their contents identified before the items can be held by the department.

{5}     One of the items inside the backpack, and the item particularly relevant to this appeal, was a cylindrical, cardboard Fritos corn chip canister, closed with a removable, translucent, gray in color plastic lid. One of the deputies who initially found the Fritos canister in the backpack noted that it was oddly heavy for a chip container and opened it by removing the translucent gray plastic lid. Once the lid

3

was removed, the deputy noticed that the container was additionally sealed with a thin, clear sheet of plastic similar to Saran Wrap. The seal was glued to the lip of the canister but appeared to the deputy to be hand-pressed, and, in the deputy's opinion, was not the original factory seal. Underneath the seal there was a plainly visible pile of potato chips that were not Fritos corn chips. The deputies were immediately suspicious of the container and its contents. At a subsequent hearing, however, the primary investigating deputy stated that she did not know at the time the canister was discovered what was inside and that she believed that it could have contained valuables.

{6} After feeling the canister's odd weight, removing its lid, and observing the apparently hand-pressed inner seal and mismatched chips, the deputy cut open the seal with a knife and carefully dumped the container's contents on the ground. Within the canister, underneath where the chips had been, there appeared to be a false bottom concealing another compartment in the canister. Unable to access this portion of the Fritos canister, the deputy tore it apart and discovered another plastic container with a screwed-on lid that had been hidden under the false bottom. The deputy took off the lid of the second container and discovered what would later be identified as nearly six-hundred pill capsules each containing fentanyl.

{7} Defendant was then charged, in relevant part, with trafficking a controlled substance, contrary to NMSA 1978, Section 30-31-20 (2006); and possession of a

controlled substance, contrary to NMSA 1978, Section 30-31-23(A) (2021).[1] After a subsequent suppression hearing, however, the district court granted Defendant's motion to suppress evidence of the fentanyl pills as a violation of his constitutional protection against unreasonable searches and seizures. *See* N.M. Const. art. II, § 10. Specifically, the district court found that while the search of Defendant's backpack was reasonably related to an inventory of valuable items in the Tahoe, searching the Fritos canister was unreasonable. The district court relied on recent precedent issued by this Court in which we held that police intrusion into a locked gun safe, found in a vehicle during an inventory search of its contents, was unconstitutional. *See Jim*, 2022-NMCA-022, ¶¶ 3, 29. The district court reasoned that the plastic wrap sealing the canister in this case was similar to the lock on the safe in *Jim*, *see id.* ¶ 23, and, thus, indicated Defendant's intent "to insure privacy regarding its contents." The State appeals, arguing that search of the Fritos canister was within the lawful scope of the inventory search of the Tahoe.

**DISCUSSION**

{8} A district court's decision to suppress evidence presents a mixed question of law and fact. *State v. Davis*, 2018-NMSC-001, ¶ 10, 408 P.3d 576. "We review the

---

[1]Defendant was also charged with various other drug and traffic offenses related to additional evidence seized from his vehicle and his failure to register or insure the Tahoe. However, because the district court order only granted suppression of the evidence found in the Fritos canister and the State only appeals its order on that issue, we do not address Defendant's remaining charges.

factual analysis for substantial evidence and review the legal analysis de novo." *Id.* The constitutionality of a vehicle inventory search, and its scope, is a matter of legal analysis reviewed de novo. *See id.*; *State v. Ochoa*, 2009-NMCA-002, ¶ 6, 146 N.M. 32, 206 P.3d 143 ("The constitutionality of a search or seizure is a mixed question of law and fact and demands de novo review." (internal quotation marks and citation omitted)). Because the district court determined that the search at issue violated only Article II, Section 10 of the New Mexico Constitution, and not the Fourth Amendment, we limit our analysis to state law, referencing federal jurisprudence where applicable.

{9}     Article II, Section 10 of the New Mexico Constitution provides, in part, that "[t]he people shall be secure in their persons, papers, homes and effects, from unreasonable searches and seizures." This provision carries with it the general requirement that any governmental search of one's person or property must be done under the authority of a warrant signed by a neutral magistrate. *See State v. Rowell*, 2008-NMSC-041, ¶ 10, 144 N.M. 371, 188 P.3d 95 ("Any warrantless search analysis must start with the bedrock principle of both federal and state constitutional jurisprudence that searches conducted outside the judicial process, without prior approval by judge or magistrate, are *per se* unreasonable, subject only to well-delineated exceptions." (internal quotation marks and citation omitted)). However, before a person can assert that their rights under Article II, Section 10 were violated

by a given search, they must establish a reasonable expectation of privacy in the item or place intruded upon. *State v. Adame*, 2020-NMSC-015, ¶ 9, 476 P.3d 872 (stating that protection under Article II, Section 10 "is conferred only when a person has a reasonable expectation of privacy in that which is searched or seized").

{10} Here, the State principally argues that Defendant had neither a subjective nor an objective expectation of privacy in the disposable Fritos canister. Because this issue is a prerequisite to Defendant's constitutional claim, we address it first.

**I.     Reasonable Expectation of Privacy**

{11} Whether an individual has a constitutionally protected expectation of privacy in a place or object searched is determined by a two-part test. *See, e.g.*, *Adame*, 2020-NMSC-015, ¶ 9 (reiterating the two-part test announced in *Katz v. United States*, 389 U.S. 347, 360 (1967) (Harlan, J., concurring)). "First, a person must have exhibited an actual expectation of privacy, and second, the expectation must be one that society is prepared to recognize as reasonable." *State v. Crane*, 2014-NMSC-026, ¶ 18, 329 P.3d 689 (text only) (citation omitted). An individual's actual—or subjective—expectation of privacy is established by their conduct, including taking steps to keep personal items from plain view. *See Adame*, 2020-NMSC-015, ¶ 9 (stating that a person demonstrates a subjective expectation of privacy through "[their] conduct"); *State v. Granville*, 2006-NMCA-098, ¶ 27, 140 N.M. 345, 142 P.3d 933 (holding that a person exhibits both an actual and objectively reasonable

expectation of privacy when they "keep[] personal items from plain view"). The objective reasonableness of a subjective expectation of privacy is determined by the court and "is given life by the factual matrix in which events take place." *Crane*, 2014-NMSC-026, ¶ 19 (internal quotation marks and citation omitted). Regarding both prongs of the test, our determination is "based on the totality of circumstances in each particular case." *See State v. Davis*, 2015-NMSC-034, ¶ 25, 360 P.3d 1161.

{12}     On appeal, the State challenges the district court's comparison between the clear plastic seal on the rim of the Fritos canister and the lock on the gun safe found in *Jim. See* 2022-NMCA-022, ¶ 3. The State asserts that Defendant could have had neither a subjective nor an objective expectation of privacy in the Fritos canister because: (1) the seal was transparent and, therefore, revealed its contents clearly; (2) the container was ostensibly trash and could not adequately protect its contents from intrusion; and (3) the Fritos canister clearly indicates what its contents were—or were supposed to be—on its label. We disagree and conclude that Defendant had a constitutionally protected expectation of privacy in the contents of the Fritos canister. Our conclusion, however, is based not on the presence of the clear plastic seal, but rather on the translucent, gray plastic lid covering the seal, the removal of which by a sheriff's deputy constituted a search under Article II, Section 10. We explain.

8

{13} In the time since the State filed its brief in chief in this case, this Court issued another opinion interpreting *Jim* and applying its holding to a closed container that did not bear any kind of lock or seal. *See State v. Sanders*, 2024-NMCA-030, 545 P.3d 1176, *cert. denied* (S-1-SC-40289, Mar. 15, 2024). In *Sanders*, the defendant was pulled over and arrested for driving with a suspended license. *Id.* ¶ 2. During a warrantless inventory search of the defendant's vehicle, deputies found an opaque black bag, zipped closed, in the rear hatchback area of the vehicle. *Id.* ¶¶ 4, 19. There was no lock, seal, or other barrier to entry into the bag beyond the zipper. *See id.* ¶ 19. Inside the black bag was another, smaller bag containing methamphetamine and associated paraphernalia. *Id.* ¶ 4. The defendant later moved to suppress the evidence found within the black bag, and the district court denied his motion. *Id.* ¶ 5. On appeal, we concluded, in part, that the defendant had an expectation of privacy regarding the contents of the outer black bag "sufficient to invoke a constitutional protection against an unreasonable search." *Id.* ¶ 18. We reasoned that the outer black bag was "opaque and zipped closed" and, therefore, excluded others from its contents unless unzipped. *Id.* ¶ 19. Comparing it to the locked safe in *Jim*, we rejected the notion that "only locked containers are afforded additional protections during vehicle inventory searches." *Sanders*, 2024-NMCA-030, ¶ 19.

{14} The reasoning in both *Sanders* and *Jim*, as well as other New Mexico precedent, supports our conclusion that Defendant reasonably expected the contents

of the Fritos canister would remain private. Regarding the first prong of the two-part test, Defendant plainly took steps to keep the canister's contents from plain view. The canister was opaque and closed with a translucent, gray lid that did not clearly reveal its contents. We view such facts to be sufficient to establish that Defendant intended to keep the canister's contents private, and we need not analogize the clear seal underneath the lid to the lock on the safe in *Jim*, as did the district court. *See Sanders*, 2024-NMCA-030, ¶ 19 (holding that the defendant had a reasonable expectation of privacy in the bag at issue primarily because "[t]he black zipper bag was opaque and zipped closed, therefore excluding others from its contents unless unzipped"); *cf. Granville*, 2006-NMCA-098, ¶ 27 (explaining that when a person takes steps to "keep[] personal items from plain view" they "exhibit[] an expectation of privacy that is not unreasonable"). The fact that the canister would, in the normal course of its use, become trash does negate Defendant's subjective expectation that its contents would be kept private. *See Crane*, 2014-NMSC-026, ¶ 20 (holding that the defendant continued to have an expectation of privacy in the contents of an opaque trash bag that had been left in a motel dumpster). We reiterate the fundamental principle that neither state nor federal constitutions recognize distinctions between containers based on their inherent value. *See id.*; *United States v. Ross*, 456 U.S. 798, 822-23 (1982) (rejecting a constitutional distinction between "worthy" and "unworthy" containers and noting that "the Fourth Amendment

provides protection to the owner of every container that conceals its contents from plain view").

{15} Similarly, the fact that Defendant's Fritos canister would not adequately protect its contents from unwanted intrusion—as compared to a gun safe—does not resolve our inquiry. We acknowledge, as we did of the zipped bag in *Sanders*, 2024-NMCA-030, ¶ 19, that a disposable cardboard chip canister with a removable plastic lid provides significantly less protection against intrusion than a locked safe. However, neither state nor federal constitutions distinguish between containers on the basis of their innate capacity—or lack thereof—to keep their contents secure. *See Ross*, 456 U.S. at 822; *see also Crane*, 2014-NMSC-026, ¶¶ 4-5, 34 (concluding that the defendant had a reasonable expectation of privacy in the contents of opaque trash bags); *Granville*, 2006-NMCA-098, ¶ 30 ("The mere *possibility* that unwelcome meddlers *might* open and rummage through the containers does not negate the expectation of privacy in their contents any more than the possibility of a burglary negates an expectation of privacy in the home." (internal quotation marks and citation omitted)). Rather, our inquiry into whether Defendant had a subjective expectation of privacy turns on whether, "by his . . . conduct, [he] has exhibited an actual (subjective) expectation of privacy." *See Adame*, 2020-NMSC-015, ¶ 9. We conclude that Defendant did so in this case.

11

{16} Turning to the second prong of the test, we conclude that Defendant's subjective expectation of privacy in the contents of the Fritos canister was also objectively reasonable. Containers found within a vehicle can contain virtually anything one uses in everyday life, including "evidence of [someone's] most private traits and intimate affairs." *Crane*, 2014-NMSC-026, ¶ 20 (internal quotation marks and citation omitted). Such containers can include purses, professional briefcases, bags with clothes or home goods, boxes with important records, and innumerable other items enclosing private material. A search of such items may reveal one's eating habits, medications, health information, financial information or money itself, and other objects of significant personal or intimate value that a person would desire to keep private. *See Granville*, 2006-NMCA-098, ¶ 25 (identifying a person's "eating, reading and recreational habits; sexual and personal hygiene practices; information about one's health, finances, and professional status; details regarding political preferences and romantic and other personal relationships; and a person's own private thoughts, activities, beliefs, and associations" as elements of people's lives that they would reasonably wish to keep private). Such is particularly true of containers including the one in this case where the owner has endeavored to conceal its contents from outsiders. As such, we conclude that Defendant's expectation of privacy in the contents of the closed and sealed Fritos canister is one society is willing to accept. *Cf. Ross*, 456 U.S. at 822 ("For just as the most frail cottage in the

12

kingdom is absolutely entitled to the same guarantees of privacy as the most majestic mansion, so also may a traveler who carries a toothbrush and a few articles of clothing in a paper bag or knotted scarf claim an equal right to conceal [their] possessions from official inspection as the sophisticated executive with the locked attaché case.").

{17} The State's argument that Defendant could not have had a reasonable expectation of privacy in the Fritos canister because its label clearly depicted what its contents were at the time of original sale is equally unavailing. In support of this argument, the State relies on a statement made in a concurrence filed in a plurality opinion issued by the United States Supreme Court. *See Texas v. Brown*, 460 U.S. 730, 750-51 (1983) (Stevens, J., concurring in the judgment) ("[S]ingle-purpose containers . . . by their very nature cannot support any reasonable expectation of privacy because their contents can be inferred from their outward appearance." (internal quotation marks and citation omitted)). The State does not offer us any precedent binding on this Court supporting this argument. Moreover, we find it without merit. As this case highlights, a container's packaging is not a reliable indicator of the container's actual contents. The existence of a label on the exterior of a reused package does not, by itself, nullify the constitutional protections its owner has regarding its contents.

{18} We conclude, therefore, that Defendant had a reasonable expectation that his belongings within the Fritos canister would remain private. We reiterate our divergence from the district court's reasoning on this point: Defendant's reasonable expectation of privacy in the canister arises from the presence of the translucent, gray plastic lid that was removed by deputies before the clear seal was discovered. As we indicated above, the deputy's removal of the lid constituted a search of the canister, and we find no meaningful distinction between its removal and unzipping the outer black bag in *Sanders. See* 2024-NMCA-030, ¶¶ 17-19; *see also State v. Rivera*, 2010-NMSC-046, ¶ 27, 148 N.M. 659, 241 P.3d 1099 (holding that an officer's opening of an opaque container constituted a search under Article II, Section 10 of the New Mexico Constitution); *United States v. Jacobsen*, 466 U.S. 109, 113 (1984) ("A 'search' occurs when an expectation of privacy that society is prepared to consider reasonable is infringed."). Removing the lid and looking inside the canister, therefore, required either a search warrant or the existence of a valid exception to the warrant requirement.

## II.    Inventory Search

{19} Having so concluded, we turn now to whether the search of Defendant's Fritos canister fell within the inventory exception to the general warrant requirement. When doing so, however, we remain cognizant of New Mexico's "strong preference for warrants." *E.g., Crane*, 2014-NMSC-026, ¶ 16 (internal quotation marks and

14

citation omitted). In New Mexico, a warrantless inventory search of a vehicle or its containers is permissible if: (1) the vehicle inventoried is in police control or custody and there exists some nexus between the arrest, if made, and impoundment; (2) the inventory search is conducted pursuant to established police regulations; and (3) the search is reasonable. *State v. Ruffino*, 1980-NMSC-072, ¶ 5, 94 N.M. 500, 612 P.2d 1311. The parties do not dispute the first two factors, so our focus is on the reasonableness of the search. An inventory search is generally deemed reasonable if it is done "pursuant to an established procedure and in furtherance of any one of three purposes: (1) to protect the arrestee's property while it remains in police custody; (2) to protect the police against claims or disputes over lost or stolen property; or (3) to protect the police from potential danger." *Jim*, 2022-NMCA-022, ¶ 13 (internal quotation marks and citation omitted). In considering these three factors regarding reasonableness, we must weigh "the governmental and societal interests advanced to justify the intrusion against the constitutionally protected interest of the individual citizen in the privacy of [their] effects." *Id.* ¶ 22 (text only) (citation omitted).

{20} Here, the district court found as a threshold matter that the deputies' inventory search of the Tahoe was lawful under the New Mexico Constitution. It also found that the search of Defendant's backpack was permissible, primarily because it was open rather than zipped or locked. Regarding the Fritos canister, however, the

15

district court found that the presence of the clear plastic seal rendered police intrusion into it unreasonable. It reasoned that the seal evinced Defendant's intent to keep its contents private and that cutting the seal open with a knife and searching the canister's contents did not further any of the three justifications underpinning a reasonable warrantless inventory search. *See id.* Regarding protecting Defendant's property inside the Fritos canister and potential claims of lost or stolen items, the district court stated that deputies could have inventoried the canister as a unit, rather than opening it, and such would be sufficient to satisfy these concerns.

{21}     In reference to potential danger, the district court concluded that there was no testimony from any officer indicating a belief that the canister contained a weapon. Thus, in the district court's view, searching the Fritos canister did not further officer safety. As stated above, the district court relied heavily on *Jim*, then recent precedent issued by this Court, in its ruling. *See id.* It likened the seal on the Fritos canister to the lock on the safe in *Jim* and concluded that, "if the deputies believed the container held something of evidentiary value, they could have (and should have) applied for a search warrant."

{22}     The State argues that the Fritos canister, unlike the safe in *Jim*, could not have adequately protected its contents, and the deputies were, therefore, justified in opening it. The State further suggests that, had deputies failed to detect valuables inside the canister, they could have been held liable for lost items, or that the Fritos

16

canister could have been mistaken for trash and thrown away. Lastly, the State urges that the department policy purportedly requiring all containers within a vehicle to be opened before they can be stored in evidence, combined with the above arguments, justifies the search as reasonable.[2] We conclude that such arguments, even combined with the general need to accurately inventory a vehicle's contents before it is towed, are insufficient to justify intrusion into Defendant's Fritos canister. Because, as discussed in the previous section, Defendant had a reasonable expectation of privacy in the contents of the Fritos canister, and, as we discuss below, the State has not provided sufficient bases to justify opening it for the purpose of mere inventory, the search was unlawful.

{23}     Regarding the first potential justification for the warrantless inventory search of the Fritos canister—i.e., protecting Defendant's property inside of it—opening the canister and inventorying its contents does not provide greater protection than simply collecting the canister as a unit. Once in police custody, the prospect of

---

[2]We are unable to identify, nor has the State provided us with, any policy statement established by the arresting agency in this case that directly requires all containers found during a vehicle inventory search to be opened. *See* Bernalillo County Sheriff's Department Rules and Regulations, *Policy Statement*, https://public.powerdms.com/bcs/tree/documents/700020 (last visited Jan. 28, 2025). Furthermore, the State's argument in this case that department policy requires that containers be opened before they can be held for safekeeping is not a sufficient basis to alter constitutionally enshrined protections against government intrusion. *See State v. Widmer*, 2021-NMCA-003, ¶ 5, 482 P.3d 1254 ("[A]n officer's adherence to a constitutionally flawed police department policy does not suffice to excuse a constitutional violation.").

17

unlawful intrusion into the chip canister, or unintentional damage to its contents, becomes exceedingly unlikely. *See Sanders*, 2024-NMCA-030, ¶ 21 ("With respect to protecting [the d]efendant's property, although there is a possibility that [the d]efendant's property could have become damaged, this 'possibility becomes exceedingly unlikely' when the officers took [the d]efendant's vehicle and property into police custody for safekeeping." (quoting *Jim*, 2022-NMCA-022, ¶ 25)).

{24}     With respect to second potential justification, protecting the police from liability, we reiterate our admonition made in both *Jim* and *Sanders*: "'we are not persuaded that opening and inventorying the contents of a locked container provides any more protection than inventorying the locked container as a unit, as a false claim can be made that items inside the safe were stolen regardless of whether [the] police opened it or not.'" *Sanders*, 2024-NMCA-030, ¶ 22 (quoting *Jim*, 2022-NMCA-022, ¶ 26). We recognize that limiting law enforcement's ability to itemize the contents of containers that are easily opened and reclosed, such as the Fritos canister at issue, to some degree reduces the government's capacity to defend itself against claims of lost or stolen property. This concern, however, can be mitigated through police procedures requiring containers to be sealed upon inventory. *See id.* ("'[S]ealing and storing containers would provide at least as much protection to the [threat of liability] as a warrantless inventory search of containers.'" (quoting *Jim*, 2022-NMCA-022, ¶ 26)). Moreover, the above-cited precedent clearly establishes that the

government's interest in protecting itself against false claims of theft or lost property yields to established constitutional protections against unreasonable search. *See, e.g.*, *id.* ("Without more, simply invoking protections against liability does not outweigh [the d]efendant's established privacy interest."). Here, had deputies left the Fritos canister closed, sealed it as such, and noted its return to Defendant in that condition, they could have had an adequate defense against claims of loss or theft. We are, therefore, not persuaded that opening the Fritos canister to inventory its contents was necessary to protect police from liability.

{25}     Regarding the final potential justification for warrantless inventory search of the Fritos canister, officer safety, the State does not argue, and we do not see any basis for it to argue, that opening Defendant's Frito canister protected deputies from harm or otherwise enhanced their safety. At the time the vehicle was inventoried, Defendant and the passenger were handcuffed and placed in the back of nearby patrol vehicles. As such, they could not regain access to the canister or the backpack in which it was found, even if a weapon had been stored there. Furthermore, should the Fritos canister have contained something inherently harmful to police—which it very arguably did, considering the potentially lethal effects of fentanyl—the canister provided deputies adequate protection from its contents until they opened it. Indeed, the likelihood of harm to deputies only increased when they opened the canister.

19

{26} For the above reasons, we conclude that the Defendant's privacy interests in the Fritos canister outweighed the government's interests in searching it. *See Jim*, 2022-NMCA-022, ¶ 22. The search was, therefore, unreasonable and a warrant was required before a search was conducted. Our review of the cited precedent, however, as well as our examination of the specific facts of this case—namely, the nature of the canister in relation to the open backpack in which it was found—lead us to conclude that a more formal articulation of the precise parameters regarding the lawful scope of warrantless vehicle inventory searches is necessary. We take this step both to further clarify the constitutional protections owed to persons whose vehicles are seized by police and to provide additional guidance to law enforcement officers formulating policies for, or governing the conduct of, inventory searches. To this end, we reiterate several principles fundamental to warrantless vehicle inventory searches: they are not investigatory in nature and exist as an exception to the general warrant requirement only to further the three justifications explained in *Jim. See* 2022-NMCA-022, ¶ 13 (stating that a vehicle inventory search is reasonable if it (1) protects the arrestee's property, (2) protects the police from claims regarding lost or stolen property, or (3) protects the police from potential danger). Our review of *Jim* and *Sanders*, and our conclusion in this case, reveal a general prohibition under Article II, Section 10 that we now expressly clarify: closed, locked, or sealed containers (that obstruct a law enforcement officer's view) found within vehicles

during an inventory search generally may not be searched without a warrant or the existence of circumstances otherwise justifying warrantless entry into the container. Absent sufficient justification under either the *Jim* factors or other exceptions to the general requirement that law enforcement officers obtain a warrant before conducting a search, intrusion into closed, locked, or sealed containers necessarily exceeds the bounds of mere inventory.

{27}     If New Mexico's "strong preference for warrants," *Crane*, 2014-NMSC-026, ¶ 16 (internal quotation marks and citation omitted), is to mean anything, it requires, at a minimum, that when the lawful justification for a warrantless search is exceeded, a warrant is required. Law enforcement officers' suspicion, however strong, that a container found in a vehicle during an inventory search contains contraband changes neither the constitutionally permissible scope of the inventory search, nor affects our analysis regarding the justifications permitting itemization of a vehicle's contents. *See State v. Boswell*, 1991-NMSC-004, ¶ 11, 111 N.M. 240, 804 P.2d 1059 ("[T]he lawfulness of an inventory search operates independently from any suspicion by the police of contraband that may be concealed in a container.").

**CONCLUSION**

{28}     For the reasons set forth, we affirm.

{29}     **IT IS SO ORDERED.**

_____
**J. MILES HANISEE, Judge**

21

**WE CONCUR:**

_____

**JENNIFER L. ATTREP, Chief Judge**


_____

**KRISTINA BOGARDUS, Judge**